STATE OF NORTH CAROLINA v. MARGARET DELLINGER

No. 7527SC259

(Filed 2 July 1975)

1. Criminal Law § 79— extra-judicial statement of codefendant — admissibility

The trial court did not err in allowing into evidence an extra-judicial statement of a codefendant.

2. Conspiracy § 6— conspiracy to commit murder — sufficiency of evidence

In a prosecution for conspiracy to commit murder, evidence was sufficient to be submitted to the jury where it tended to show that defendant had conversations with one Payseur about having her son-in-law killed and that defendant saw Payseur after the killing and discussed payment with him.

State v. Dellinger

3. Criminal Law §§ 79, 102— extra-judicial statement of codefendant —
use by solicitor in jury argument

The trial court did not err in denying defendant's motion for a
mistrial when the solicitor used portions of a codefendant's statement
dealing with defendant in his argument to the jury where the court
did, upon defendant's objection to the solicitor's argument, repeat its
limiting instruction to the jury.

APPEAL by defendant from *Thornburg, Judge.* Judgment
entered 7 November 1974 in Superior Court, LINCOLN County.
Heard in the Court of Appeals 28 May 1975.

Defendant was charged in an indictment, proper in form,
with conspiracy to commit murder. She pleaded not guilty and
together with Arnold Jones, who was charged with being an
accessory after the fact, was tried before a jury.

Russell Audie Payseur was the principal witness for the
State. He testified that on the afternoon of 29 June 1974 he
went to the home of defendant and discussed with her payment
for his killing of Randall Smith, defendant's son-in-law. Prior
to this occasion, defendant's daughter Kathy had promised
Payseur $3,000.00 if he could arrange the death of Smith. This
conversation took place in the presence of defendant, who later
promised Payseur up to $5,000.00 for Smith's death. Defendant
and her daughter told Payseur that the money would come from
insurance on Smith's life.

Payseur is paralyzed from the waist down. He was driven
to defendant's home by Elbert Rickman. Arnold Jones was in
the back seat. Payseur had prepared a sawed-off shotgun, using
a .20 gauge barrel and a .16 gauge stock, which he put in the
car.

Randall Smith joined the men and they went for a ride.
They left Jones at a place called Jud's Pantry and, since they
had been drinking, drove back on a country road. They stopped
at an isolated spot to "use the bathroom." Payseur testified
that he decided to try out his shotgun and pointed it at a fence
post. Afraid that the gun might explode, he turned to grasp
the seat. When he turned around, Smith had seized the barrel.
Smith pulled the gun and it fired, killing him. Blood spattered on
the windshield. Payseur and Rickman left the body at the scene
and went to pick up Jones. Rickman and Jones washed the blood
off the car. Defendant came to Payseur the next day and, when
he told her Smith was dead, promised to pay him.

Dr. Guy Joseph Guarino testified that Randall Smith died of massive bleeding secondary to a gunshot wound in the left chest. In his opinion, the wound was caused by a .20 gauge shotgun.

Payseur further testified that defendant had told him she wanted Smith killed because he had beaten and threatened to kill her, his wife and his two children. Payseur said he did not promise to kill Smith but only to get someone else to do the job for the money which defendant and her daughter were going to pay him. On cross-examination Payseur admitted that at the time of the offense he was a heavy user of drugs and alcohol.

Elbert Rickman's testimony tended to corroborate Payseur's account of the events of June 29. Larry James Carpenter testified that he took Payseur to defendant's home on the Sunday after the killing and heard him tell defendant he wanted the money in tens, fifties and twenties. Barry Divine, an insurance agent, testified that in March 1974 he sold Randall Smith additional life insurance and that defendant and her daughter were present at the time.

Arnold Jones testified for defendant. He stated that he accompanied Payseur and Rickman to defendant's home but denied having overheard a conversation between defendant and Payseur about murder. On cross-examination the State introduced a statement made by Jones on the morning after his arrest. It included the following: "Rusty [Payseur] said, 'I am going to keep my promise or bargin [sic].' Both the women said the money will be waiting. It will be two or three weeks. Rusty told them to make sure it is in small bills. Rusty said something about $4,000.00." The court instructed the jury that if they found that such a statement was made they may consider it only as evidence against Jones and not against defendant Dellinger.

Defendant's daughter Kathy testified that she and Payseur had discussed the killing of her husband but that she did not want him killed. Her mother was not present during this conversation. She testified that her husband drank excessively and often was absent from work. After Smith's death Payseur told her he was in a hurry for the money. She knew Payseur had killed her husband, and, when she discussed this fact with Payseur's mother, defendant overheard the conversation and became upset.

Defendant Margaret Dellinger denied any prior knowledge or agreement with respect to the killing of her son-in-law. She denied having told neighbors she was afraid of him and denied knowing that he had increased his insurance coverage.

The State offered rebuttal evidence from Smith's employer that he had been a regular worker with a good reputation. The company had carried a $3,000.00 insurance policy on Smith's life, with his wife as beneficiary.

The jury found defendant Jones not guilty and defendant Dellinger guilty as charged. From judgment imposing a sentence of eight to ten years' imprisonment, Margaret Dellinger appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Wilson & Lafferty, P.A. by John O. Lafferty, Jr., for defendant appellant.*

ARNOLD, Judge.

[1]  Defendant Dellinger assigns error to trial court's admission into evidence of the extra-judicial statement of codefendant Jones. Quoting from *State v. Jones,* 280 N.C. 322, 339, 185 S.E. 2d 858, 868 (1972), she argues that "the prejudicial impact of testimony of out-of-court declarations of a codefendant, even when the right to confrontation is afforded, must be evaluated in the light of the competent admitted evidence against the nondeclarent defendant referred to in such declarations." Defendant contends that since Jones' statement tended to corroborate Payseur's testimony, which was suspect because of his use of drugs, the court's limiting instruction had no effect and the admission of the statement was prejudicial. We disagree. Payseur's account of the events surrounding Smith's death was competent evidence incriminating defendant Dellinger. It was corroborated at various points by other competent evidence. In this case, as in *Jones, supra,* there was no gap between the impact of the statement made by Arnold Jones and of other evidence competent against defendant Dellinger. This assignment of error is overruled.

[2]  Defendant next assigns error to the court's denial of her motions for nonsuit. This assignment of error also is overruled. Viewed in the light most favorable to the State, there was ample

evidence of acts both before and after the murder to support a jury finding that defendant agreed with Payseur to have Smith killed. *See State v. Horton,* 275 N.C. 651, 170 S.E. 2d 466, *cert. denied* 398 U.S. 959, *rehearing denied* 400 U.S. 857 (1970); *State v. Locklear,* 8 N.C. App. 535, 174 S.E. 2d 641 (1970).

[3] Finally, defendant assigns as error the court's refusal to declare a mistrial when the solicitor used portions of Jones' statement dealing with Dellinger in his argument to the jury. In noncapital cases, a ruling on motion for mistrial rests largely in the discretion of the trial court. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972); *State v. Brown,* 18 N.C. App. 35, 195 S.E. 2d 567, *cert. denied* 283 N.C. 586, 196 S.E. 2d 810 (1973). The record shows that, upon defendant's objection to the solicitor's argument, the court repeated its limiting instruction to the jury. Under these circumstances, we find no abuse of discretion in denying defendant's motion.

Defendant has received a fair trial free from prejudicial error.

No error.

Judges MARTIN and CLARK concur.